United States District Court
Southern District of Texas
**ENTERED**
February 21, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| YUQI "RICHARD" LIN, Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-20-1904 |
| VERITEX COMMUNITY BANK, N.A. f/n/a GREEN BANK, N.A., Defendant and Third-party Plaintiff, | § | |
| VS. | § | |
| RG OPPORTUNITIES I, LP, Third-party Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Richard Lin sued Veritex Community Bank for breach of contract and breach of fiduciary duty, alleging that Veritex prematurely released money he had invested from escrow. Veritex responds that the money belonged to RG Opportunities I, LP, not Lin, and that Lin is only a partner in RGO. Veritex contends that as a result, Lin lacks standing to bring his claims against Veritex. Veritex filed a third-party complaint against RGO and New City Advisors LLC, seeking indemnity, contribution, and attorney's fees and expenses. The court dismissed the breach of fiduciary duty claim and the claim against New City. Lin and Veritex cross-moved for summary judgment, and Veritex moved for summary judgment on its third-party claims. The issues have been thoroughly argued in the parties' briefs, responses, and replies.

Based on the pleadings; the motions, responses and replies; the applicable law; the summary judgment record; and the parties' briefs; Veritex's motion for summary judgment as to its third-party claims, (Docket Entry No. 49), is granted as to RGO and denied as moot as to New

City. Veritex's motion for partial summary judgment as to Lin's claims, (Docket Entry No. 61), is granted. Lin's motion for partial summary judgment, (Docket Entry No. 62), is denied.

The reasons for these rulings are explained below.

## I. Background

The United States Citizenship and Immigration Services EB-5 program permits immigrant investors to become lawful permanent residents if they invest money in United States businesses to create at least 10 full-time jobs. *See* 8 U.S.C. § 1153(b)(5). Richard Lin, a Chinese national, applied for an EB-5 visa. (Docket Entry No. 62-1 at 2). Under this program, he was required to file a I-526 petition with the USCIS showing that he was committing the required amount of lawfully acquired capital. (Docket Entry No. 62-1 at 2). Lin invested with RGO Opportunities I, LP, which is a company set up to provide Chinese nationals with a means of qualifying for an EB-5 visa. RGO was in the business of opening and running a chain of Brazilian barbecue restaurants. (Docket Entry No. 61-1 at 49–50). RGO entered into an Escrow Agreement to hold Lin's and other investors' funds until certain conditions were met, including that the USCIS approved the investors' I-526 petitions. (Docket Entry No. 62-1 at 2). If and when the specific conditions were met, the funds would be released to RGO, in increments, to allow it to develop the business and create the required jobs. (Docket Entry No. 62-9 at 3; Docket Entry No. 62-1 at 3).

Veritex was the escrow agent. The Escrow Agreement governed how Veritex would hold, disburse, and return the funds it held in the escrow account. NESF Escrow Services Corporation, a wholly owned subsidiary of NES Financial Corporation, served as the escrow administrator and as the liaison between Veritex and other parties to the Escrow Agreement. New City served as the Subscriber Representative, responsible for representing the interests of all the investors in RGO, including Lin. (Docket Entry No. 62-9 at 1).

The Escrow Agreement referred to the foreign investors as "Subscribers." Each Subscriber invested in units of $500,000.00, referred to in the Escrow Agreement as the "Subscription Proceeds." Lin was a Subscriber, but he was not a party to the Escrow Agreement. (Docket Entry No. 62-9 at 1).

Various provisions of the Escrow Agreement identify the escrowed funds as "investor funds," which were disbursed based on the progress of each investor's I-526 application. When an investor first filed an I-526 petition, Veritex was authorized to release $125,000 of that investor's contribution, in accordance with a Written Direction from RGO and New City. (Docket Entry No. 62-9 at 3). When two investors' I-526 petitions were approved, Veritex was authorized to release an additional $325,000 from each of the approved investors' contributions to the RGO account. (Docket Entry No. 62-9 at 3). Before releasing any funds, Veritex needed to receive a Written Direction from RGO and the Subscriber Representative, New City, stating that the I-526 application was at the required stage. (Docket Entry No. 62-9 at 3). To make the additional disbursement of $325,000, Veritex needed to receive a Written Direction from RGO and New City with a certification from the USCIS that two investors in RGO had received approval of their I-526 petitions. (Docket Entry No. 62-9 at 3).

Following a Written Direction from RGO and New City that an investor's I-526 application was denied, Veritex was required to return the investor's investment to that investor without deducting or paying interest. (Docket Entry No. 62-9 at 3). If there were insufficient funds remaining in escrow, the Escrow Agreement required RGO and New City to "exercise their rights in the Payment Guaranty to ensure prompt repayment of the Subscription Proceeds of any denied Subscriber." (Docket Entry No. 62-9 at 3).

The Escrow Agreement required RGO to provide Veritex "schedules disclosing the name, address and Tax Identification Number (as applicable) of each of the Subscribers, and such other information as will enable the Escrow Agent to attribute to a particular Subscriber all Subscription Proceeds received by the Escrow Agent." (Docket Entry No. 62-9 at 1). Under the Escrow Agreement, New City was the tax owner of record and each investor was responsible to New City for its part of the taxes on the earnings of its investment. (Docket Entry No. 62-9 at 4).

Lin's I-526 petition was approved on February 28, 2017, the first petition of the RGO investors to be approved. (Docket Entry No. 62-1 at 2). On March 2, 2017, Veritex received a Written Direction to disburse $375,000 of funds associated with Lin to RGO under Paragraph 3(b) of the Escrow Agreement. (Docket Entry No. 62-13). The Direction was signed by RGO and New City, as required by the Escrow Agreement. (Docket Entry No. 62-13). On March 8, 2017, Veritex released the funds from escrow. (Docket Entry No. 62-1 at 3).

Lin alleges that the $375,000 came from his individual investment in RGO and that Veritex breached the Escrow Agreement by releasing these funds before a second I-526 petition was approved. (Docket Entry No. 23 at 2). As a result, he alleges, RGO management misspent his investment and he lost $375,000. (Docket Entry No. 62-1 at 4).

Lin sued. The court granted Veritex's motion to dismiss on Lin's fiduciary duty claim, leaving his breach of contract claim. Veritex asserted third-party claims against RGO and New City for contribution, indemnity, and breach of the Escrow Agreement, based on their failure to defend and indemnify Veritex. New City was dismissed. Veritex and RGO moved for summary judgment as to liability for Lin's claims, and Veritex moved for summary judgment as to its claims against RGO.

## II. Summary Judgment

### A. The Legal Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 610 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating'" that "there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material fact, but it need not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017). "If the moving party fails to meet [its] initial burden, [the summary judgment motion] must be denied, regardless of the nonmovant's response." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.,* 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., LLC v. River Birch, Inc.,* 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)). When the facts are undisputed, the court "need only decide whether those undisputed facts are material and entitle the movant to judgment as a matter of law." *Flowers v. Deutsche Bank Nat. Tr. Co.*, 614 F. App'x 214, 215 (5th Cir. 2015).

**B. The Summary Judgment Record**

Veritex submitted the following in support of its motion for summary judgment and in response to Lin's motion for summary judgment:

- an affidavit from Paul McGuire in Support of Veritex Community Bank, N.A.'s Motion for Partial Summary Judgment on Plaintiff's Claims dated November 29, 2021;
- the Subscription Escrow Agreement dated September 14, 2016;
- an email dated March 2, 2017, from Bruce Le to Paul J. McGuire;
- a Form of Written Direction dated March 2, 2017;
- RGO's Certificate of Incumbency;
- New City's Certificate of Incumbency;

- Richard Lin's Responses to Veritex Community Bank's First Set of Interrogatories;
- excerpts from Richard Lin's deposition;
- Order re Motion to Dismiss filed in the United States District Court for the Northern District of Texas;
- the errata sheet for Richard Lin's deposition;
- Paul McGuire's affidavit dated January 13, 2022; and
- a Form of Written Direction dated November 30, 2016.

(Docket Entry Nos. 61-1, 68-1).

Lin submitted the following evidence in support of his motion for summary judgment and in response to Veritex's motion:

- Richard Lin's declaration, (Docket Entry Nos. 62-1, 63-1);
- the USCIS Notice of Approval for Bianfeng Li's I-526 petition, (Docket Entry Nos. 62-2, 63-2);
- a bank statement for RGO dated March 31, 2017, (Docket Entry Nos. 62-3, 63-3);
- a complaint filed against Terry Chan and Gary Chan, the formerly controlling partners and managers of RGO, and others, in the United States District Court for the Southern District of Ohio, (Docket Entry Nos. 62-4, 63-4);
- a motion to dismiss filed by Terry Chan and Gary Chan in the United States District Court for the Southern District of Ohio, (Docket Entry Nos. 62-5, 63-5);
- an email from Coleen Danaher to Paul McGuire dated August 25, 2016, (Docket Entry No. 62-6, 63-6);
- Richard Lin's deposition, (Docket Entry No. 62-7, 63-7, 63-12);
- excerpts of the RGO Comprehensive Business Plan, (Docket Entry No. 62-8, 63-8);
- the Subscription Escrow Agreement, (Docket Entry No. 62-9, 63-9);

- Paul McGuire's deposition, (Docket Entry No. 62-10, 63-10);
- Memorandum and Order dated January 4, 2021, (Docket Entry No. 62-11, 63-11);
- email correspondence from Reid Thomas, the Executive Vice-President of NES Financial, to Lili Wang, a New City employee, and others dated January 20, 2018, (Docket Entry No. 62-12, 63-15);
- a form of Written Direction dated March 2, 2017, (Docket Entry No. 62-13, 63-13); and
- Gary Chan's affidavit dated March 8, 2017, (Docket Entry No. 62-14, 63-14).

## III. Analysis

### A. Standing

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398 (2013). "One element of the case-or-controversy requirement is that [the plaintiff] . . . must establish that [he or she has] standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "To have standing to sue, the plaintiff must demonstrate injury in fact that is fairly traceable to the defendant's conduct and that would be redressed by a favorable judicial decision." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 396 (5th Cir.2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," but at the summary judgment stage, "the plaintiff can no longer rest on 'mere allegations.'" *Lujan*, 504 U.S. 555, 563 (1992). The plaintiff must establish his injury with "specific facts," by "affidavit or other evidence." *Id.*

Veritex argues that Lin has not suffered an injury in fact that is fairly traceable to Veritex's actions because the money at issue belonged to the partnership, not to Lin. Veritex argues that Lin gave $500,000 to RGO in exchange for a partnership interest, so that Lin owns only his

proportionate share of RGO's surplus asserts after payment of partnership debts. Veritex argues that there is no surplus of assets because RGO is no longer operating and still owes debts that it cannot pay back.

Lin responds that he has been "personally aggrieved" by Veritex's breach because he lost the $375,000 that he committed to RGO as an investment. (Docket Entry No. 61-1 at 69). He testified that in exchange for this investment, he received a membership interest as a limited partner, an interest he still owns. (Docket Entry No. 61-1 at 66). Lin argues that the Veritex corporate representative testified that the funds at issue were "Richard Lin's investment funds," that the funds related to Lin's I-526 approval, and that the wire notification instructing the disbursement referred to Lin. (Docket Entry No. 63-10 at 21). According to Lin, this makes the injuries personal to him, rather than to the partnership. Lin additionally argues that his injury is redressable because RGO still exists and he could receive a permanent resident visa if he recovered the $375,000 he claims in this case and reinvests it in RGO before 2023.

Under Texas law, "a partner or other stakeholder in a business organization has constitutional standing to sue for an alleged loss in the value of its interest in the organization," but Lin has not argued that he lost the value in his partnership interest. *See Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 778 (Tex. 2020), *reh'g denied* (Oct. 2, 2020). In support of his argument that partner or shareholder standing does not implicate constitutional standing, Lin cites *In re Whittington*, 530 B.R. 360, 389 (Bankr. W.D. Tex. 2014) and *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 319 (5th Cir. 1999). Both cases involved plaintiffs who had separately established concrete injuries in fact, satisfying the Article III standing requirements. *In re Whittington*, 530 B.R. 360, 390 (Bankr. W.D. Tex. 2014) ("Plaintiffs have plainly demonstrated their status as investors who were concretely and actually injured by Whittington's conduct"); *Ensley v. Cody*

*Res., Inc., 1*71 F.3d 315, 320 (5th Cir. 1999) ("Ensley and his wife face a significant diminution in the value of their shares."). The courts in these cases then addressed prudential standing under Federal Rule of Civil Procedure 17, by exploring whether the plaintiffs, as investors and shareholders, were the "real-part[ies]-in-interest," rather than the corporation in which they were invested or were shareholders. *In re Whittington*, 530 B.R. 360, 391 (Bankr. W.D. Tex. 2014); *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 320 (5th Cir. 1999).

Lin's claim is different. Lin is not bringing this lawsuit "for the benefit of the partnership and other partners." *See Art Midwest Inc. v. Atl. Ltd. P'ship XII*, 742 F.3d 206, 217 (5th Cir. 2014). But his injury is based only on money he invested in the partnership. He alleges that he lost "his specific investment—that is separate and apart from any other injury that could have been suffered by the partnership or other RGO investors." (Docket Entry No. 63 at 16). But under Texas law, "[a] partnership is an entity distinct from its partners," and "[p]artnership property is not property of the partners." Tex. Bus. Orgs. Code Ann. §§ 152.056; 152.101. "[R]egardless of which partner had legal title, no partner owns specific partnership property but each owns a specific interest . . . of such property." *Biggs v. First Nat. Bank of Lubbock*, 808 S.W.2d 232, 237 (Tex. App. 1991), *writ denied* (Oct. 23, 1991). *See also Keller v. United States*, 697 F.3d 238, 243 (5th Cir. 2012) (under Texas law, the intent of the parties, rather than legal title, controls whether property belongs to a partner or the partnership). Lin's partnership interest is "his proportionate share of the surplus of the whole after payment of the partnership debts," *Humphrey v. Bullock*, 666 S.W.2d 586, 590 (Tex. App.—Austin 1984, writ ref'd n.r.e.), not the precise amount of money he initially invested.

Lin relies on *In re Fisher*, 433 S.W.3d 523, 527 (Tex. 2014), *as corrected on denial of reh'g* (May 2, 2014), in which the Texas Supreme Court recognized that "a partner who is

"personally aggrieved" may bring claims for those injuries suffered directly. *In re Fisher*, 433 S.W.3d 523, 527 (Tex. 2014), *as corrected on denial of reh'g* (May 2, 2014). In *Fisher*, the court concluded that at the motion to dismiss stage, it was sufficient that a partner alleged personal damages unique to him, such as "loss of earning capacity, lost profits, loss of income, damage to credit reputation, lost investments," injury to his character, and mental anguish. *Id.*

Under the Escrow Agreement, investor funds held by Veritex corresponded to specific investors. If and when an investor's I-526 petition was not approved, Veritex was required to refund the amount of money the investor paid directly to the investor, not to RGO. Lin and Veritex's corporate representative both testified that the $375,000 funds at issue were associated with Lin's investment. Lin explains that the condition in the Escrow Agreement requiring two investors' applications to be approved before Veritex released additional money to RGO made it likely that the remaining investors' petitions would be approved and the project would be fully-funded and successful. (Docket Entry No. 63-1 at 3). He alleges that his petition was approved first but that Veritex did not wait for a second applicant to be approved before releasing Lin's investment to RGO, as required under the Escrow Agreement. (Docket Entry No. 63-1 at 3–4). The other investors' funds that were not released to RGO were interpleaded with and subsequently disbursed to RGO in *Green Bank, National Association v. RG Opportunities I, L.P., et al.*, No. 4:18–CV–0465, (S.D. Tex. Feb. 25, 2018). (Docket Entry No. 63-1 at 7).

The record evidence shows that the $375,000 investment that was prematurely released to RGO was identified as Lin's investment by New City and RGO, and that Lin was relying on this investment to qualify for the I-526 visa. Lin provided this investment in exchange for his partnership interest. Although the investors, and not RGO, were responsible for taxes and earnings while the funds were in escrow, Lin has pointed to no evidence that he, rather than the partnership,

owned the funds. Indeed, the purpose of this arrangement was for the partnership to use the funds to create jobs, not for the individual investors to make a profit. Lin would have been entitled to a refund if his petition was denied, but that cannot be the basis for his injury. His I-526 petition was approved in February 2017.

Lin argues that he "lost" his investment, but he continues to own the partnership interest that he paid for. It may not be worth anything, but that is a different issue. Lin has not pointed to any evidence showing that he suffered a personal monetary loss that is different from the partnership's loss, like the injuries in *Fisher*. The record shows that Lin's investment was intended to be the partnership's property, and that the partnership would have received the funds even if they had not been prematurely disbursed. Any suggestion that Lin suffered a personal loss from this disbursement is speculation.

Lin has not shown that he suffered an injury based on the early disbursement of his investment to RGO. He lacks Article III standing to sue on this basis.

**B. Lin's Claim for Breach of Contact**

Even if Lin had Article III standing, he would still need to show that he was a third-party beneficiary of the Escrow Agreement and that he was damaged by Veritex's breach of the Agreement. *See Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (the elements of breach of contract are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach") (quoting *Valero Mktg & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. App.—Houston[1st Dist.] 2001, no pet.)).

Lin was found to be a third-party beneficiary at the motion to dismiss stage. (Docket Entry No. 27 at 8). Even if Lin is a third-party beneficiary, Lin has still failed to show that there is a

factual dispute material to determining whether he suffered any damages from the breach. "[M]oney damages are essential in contract claims seeking money damages (though not for contract claims seeking something else)." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 656 (Tex. 2009). Lin's only alleged loss is his investment in RGO, but he has not provided or pointed to any evidence to show that he, rather than the partnership, suffered a loss from the alleged misuse of this money. Lin has not shown a genuine factual dispute material to determining his damages, and therefore Veritex is entitled to summary judgment on Lin's breach of contract claim.

**C. Veritex's Third-Party Claims**

Veritex seeks summary judgment on its claims for contribution, indemnity, and breach of contract against RGO. Veritex voluntarily dismissed its claims against New City; its motion for summary judgment as to New City is moot. Veritex's claims for contribution and indemnity against RGO are also moot as a result of the summary judgment ruling in its favor on liability as to Lin. Veritex's remaining claim is for breach of contract based on RGO's failure to defend Veritex from Lin's claims.

Section 6(d) of the Escrow Agreement provides that RGO

> agrees that in the event **any controversy arises under or in connection with this Agreement** or the Subscription Proceeds or [Veritex] is made a party to or intervenes in any litigation pertaining to this Agreement or the Subscription Proceeds, to pay to the Escrow Agent reasonable compensation for its extraordinary services and **to reimburse the Escrow Agent for all costs and expenses, including legal fees and expenses, associated with such controversy or litigation.**

(Docket Entry No. 49-1 at 12) (emphasis added). Section 6(g) provides that RGO and New City "jointly and severally agreed to indemnify [Veritex] . . . against all Claims . . . and Losses . . . incurred by [Veritex] as a result of or in connection with [Veritex's] serving the capacity of escrow

agent under this Agreement." (Docket Entry No. 49-1 at 13). RGO and New City agreed to "assume the investigation and defense of any Claim, including the employment of counsel acceptable to the applicable Indemnified Party and the payment of all expenses related thereto" and "to pay the costs and expense thereof, to employ separate counsel with respect to any such Claim" if Veritex has different defenses or interests from RGO and New City. (Docket Entry No. 49-1 at 13). "Claim" is defined under the Agreement as "all claims, lawsuits, causes of action or other legal actions and proceedings of whatever nature brought against . . . the Escrow Agent . . . so long as the claim . . . is alleged or determined directly or indirectly to arise from . . . the performance by the Escrow Agent of its powers and duties under this Agreement." (Docket Entry No. 49-1 at 13).

Veritex served RGO with a written demand for contribution and indemnity, including a request for RGO to assume its defense, on January 8, 2021. (Docket Entry No. 49-1 at 32). RGO did not respond. (Docket Entry No. 41-1 at 30). RGO admitted that this lawsuit "pertains" to the Escrow Agreement. (Docket Entry No. 49-1 at 69).

RGO argues that by disbursing Lin's funds prematurely, Veritex excused RGO from performing under the Agreement. Alternatively, RGO argues that its release of claims fail the express negligence test and the conspicuousness requirements under *Dresser Indus. v. Page Petroleum*, 853 S.W.2d 505 (Tex. 1993).

"[T]he contention that a party to a contract is excused from performance because of a prior material breach by the other contracting party is an affirmative defense that must be affirmatively pleaded or it is waived." *City of The Colony v. N. Texas Mun. Water Dist.*, 272 S.W.3d 699, 746 (Tex. App.—Fort Worth 2008, no pet.). RGO did not assert this affirmative defense, so it has been waived. (Docket Entry No. 43 at 4–5).

Even if the defense had not been waived, Veritex's alleged breach as to Lin cannot be sufficient to eliminate RGO's duty to defend. If that were the case, any claim against Veritex involving its obligations under the Escrow Agreement would allege a breach relieving RGO of any obligation to defend under the Agreement. That proves too much. *See Phoenix Holdings, Ltd. v. Circle C Land Corp.,* 987 S.W.2d 933, 937 (Tex. App.—Austin 1999, pet. denied) (courts are required "to interpret the contract in its entirety, to harmonize its various provisions, and to reject where possible an interpretation that would render any provision meaningless because it is presumed the parties intended each provision to have effect").

The Escrow Agreement excuses indemnification only if "the Escrow Agent's gross negligence or willful misconduct was the primary cause of such damages." (Docket Entry No. 49-1 at 11). RGO relies on *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017), explaining that "when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." In *Cimco*, the defense was not waived and the jury concluded that both parties failed to comply with the agreement. This opinion addresses neither waiver nor what constitutes a failure to perform for purposes of excusing a duty to defend.

RGO also argues that Veritex's behavior demonstrates gross negligence or willful misconduct. "A claim that a contractual exclusion precludes indemnity is an affirmative defense." *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 126 (Tex. App. 2002). RGO did not plead gross negligence as part of any affirmative defense, and has pointed to no evidence showing gross negligence or willful misconduct. *See IP Petrol. Co. v. Wevanco Energy, L.L.C.,* 116 S.W.3d 888, 897 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (requiring "actual

subjective knowledge of an extreme risk of serious harm" for gross negligence or willful misconduct).

RGO additionally argues that the Escrow Agreement is illusory because if RGO must indemnify Veritex, Veritex has no obligation to comply with the Agreement. But while Veritex is permitted to seek contribution and indemnity from RGO for damages it would be forced to pay, Veritex could still be legally liable for failing to perform under the Agreement. And it is liable for any gross negligence or willful misconduct in the performance of its obligations.

Veritex argues that the indemnity and release provisions fail the express negligence test and the conspicuousness requirements under *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505 (Tex. 1993). *Dresser* was limited to "solely to those types of releases which relieve a party in advance of liability for its own negligence." *Id.* at 507. Under *Dresser*, "the express negligence component of the fair notice requirements does not apply where an indemnitee is seeking indemnification from claims not based on the negligence of the indemnitee." *DDD Energy, Inc. v. Veritas DGC Land, Inc.*, 60 S.W.3d 880, 885 (Tex. App.—Houston [14th Dist.], 2001). There is no negligence claim against Veritex here. The requirements under *Dresser* that the release be conspicuous and pass the express negligence test do not apply.

RGO has failed to show factual disputes material to determining whether it breached the Escrow Agreement by failing to provide a defense for Veritex. Veritex must show that there was a valid Agreement, it performed under the Agreement, RGO breached, and Veritex sustained damages as a result of the breach. *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). The parties have both provided evidence showing that they understood the Agreement to be a valid, written contract. RGO has not pointed to evidence that Veritex failed to perform its obligations to RGO under the Agreement, and the alleged breach as to Lin is not a

failure to perform as to RGO. The record shows that Veritex sought a defense to Lin's claims and that RGO failed to provide for Veritex's defense as the Escrow Agreement required. Veritex is entitled to judgment as a matter of law on its breach of contract claim, based on RGO's failure to defend, and as to the reasonable attorney's fees, legal expenses, and court costs that it has incurred in connection with this case.

## IV. Conclusion

Veritex's motion for partial summary judgment on its third-party claims, (Docket Entry No. 49), is granted as to RGO and denied as moot to New City. Veritex's motion for partial summary judgment on Lin's claims, (Docket Entry No. 61), is granted. Lin's motion for partial summary judgment, (Docket Entry No. 62), is denied.

SIGNED on February 21, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge